UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHNATHEN N.,[1]

                             Plaintiff                  DECISION AND ORDER

-vs-

                                                    1:20-CV-0590 CJS

COMMISSIONER OF SOCIAL
SECURITY,

                             Defendant.
_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied Plaintiff's application for Supplemental Security Income ("SSI") benefits. Plaintiff, who attained the age of eighteen while his claim was pending before the Commissioner, seeks benefits both as a child and as an adult. Now before the Court is Plaintiff's motion (ECF No. 13) for judgment on the pleadings and Defendant's cross-motion (ECF No. 16) for the same relief. For the reasons discussed below, Plaintiff's application is denied, and Defendant's application is granted.

STANDARDS OF LAW

<u>Applications for Benefits as a Child</u>

The legal standard applicable to claims for SSI benefits on behalf of children is well

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

settled and not in dispute:

> SSI is meant "[t]o assist those who cannot work because of age, blindness, or disability," by "set[ting] a Federal guaranteed minimum income" for those citizens. *Schweiker v. Wilson*, 450 U.S. 221, 223, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) (internal quotation marks omitted). A child under 1[8] is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted and can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

*Juarez on behalf of R.R.O. v. Saul*, 800 F. App'x 63, 64 (2d Cir. 2020). More specifically,

> [t]o qualify for disability benefits, a child under the age of eighteen must establish that: (1) she is not engaged in "substantial gainful activity"; (2) she has a "medically determinable impairment[ or combination of impairments] that is severe"; and (3) these severe impairments "meet, medically equal, or functionally equal the listings." 20 C.F.R. § 416.924(a)-(d); *see also Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir.2004). As is most pertinent here, a combination of impairments "functionally equal" the listings if they "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a.

*Swiantek v. Comm'r of Soc. Sec.,* 588 F. App'x 82, 83 (2d Cir. 2015).

> Functional limitations are to be evaluated in six "domains": (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. *Id*. § 416.926a(b)(1).
>
> ***
>
> A child will be found to have a marked limitation in a domain when his impairment interferes seriously with his ability to independently initiate, sustain, or complete activities. *Id*. § 416.926a(e)(2). "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." *Id*. A child will be found to have an extreme limitation in a domain when his impairment interferes very seriously with his ability to independently initiate, sustain, or complete activities. *Id*. § 416.926a(e)(3).

*Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012).

<u>Applications for Benefits as an Adult</u>

The Commissioner decides adult applications for SSDI and SSI benefits using a five-step sequential evaluation:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[2]  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted)

<u>Actions in Federal Court</u>

With regard to applications on behalf of children and adults, an unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter,

---

[2] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

3

upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.   Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review— even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

FACTUAL and PROCEDURAL BACKGROUND

This action has a particularly long and complicated procedural history which the Court will not restate here. The reader is presumed to be familiar with the facts and procedural history of this action. The Court will refer to the record only as necessary to address the errors alleged by Plaintiff.

Plaintiff claims to be disabled due to multiple sclerosis ("MS"), with accompanying "bilateral fine motor dexterity impairment," and borderline intellectual functioning. Tr. 450. Plaintiff applied for SSI benefits prior to reaching age eighteen, and subsequently reached age eighteen while the action was still pending.  Accordingly, the issue before the Administrative Law Judge ("ALJ") in this action was "whether the claimant was disabled under section 1614(a)(3)(C) of the Social Security Act for the period before age 18 and whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act beginning at age 18." Tr. 377.

On February 27, 2018, a hearing was held before the ALJ, at which Plaintiff, who was represented by an attorney, testified, as did his mother, a vocational expert ("VE") and an impartial medical expert ("ME"), neurologist Debra Ann Pollack, M.D. ("Pollack"). Tr. 454.  On the day of the hearing, Plaintiff's counsel submitted additional updated medical records, and indicated that he was still attempting to obtain certain school records.  Because of this, the ME, who was testifying remotely by telephone, did not have access to all of the documents that would eventually be added to the record. Tr. 456-460.  Additionally, the hearing began later than anticipated, which, due to a conflict in Dr. Pollack's schedule, resulted in the ALJ having only an abbreviated opportunity to take testimony from Pollack that day. Tr. 482, 484.  Dr. Pollack, though, did offer opinion testimony based on the records that she had and the testimony that she heard that day. Tr. 486-511.  Pollack indicated that Plaintiff did not meet the pediatric listing for multiple sclerosis (Listing 111.21), but did meet or equal an adult listing (Listing 11.09B). Tr. 489-492.  With regard to the childhood listing, Pollack indicated that Plaintiff had less than

6

marked difficulties in the domains of acquiring and using information, attending and completing tasks and health and physical well being, and no limitations in the remaining domains. Tr. 497–499.   With regard to the adult listing, Pollack found, based primarily on a neurological evaluation performed in 2017, that Plaintiff had "marked" limitations in "physical functioning with coordination, balance difficulty and fatigue," and in maintaining concentration, persistence or pace. Tr. 490.[3]   Pollack also indicated that Plaintiff's condition appeared to have worsened "somewhat" since he turned eighteen. Tr. 499. The ALJ indicated, though, that she would send the newly-received records to Pollack and see whether they would change her opinion. Tr. 496, 511.   The VE also testified, and indicated, in pertinent part, that a claimant could not be "off task" more than 15 percent of the time, or miss more than two days of work per month, and still maintain competitive employment. Tr. 503.

On May 29, 2019, the administrative hearing continued. Tr. 410□0446.   In the interim, Dr. Pollack had received and reviewed the additional records.   The ALJ took additional testimony from Plaintiff, the VE, and Pollack.   Plaintiff indicated that he was by then in his second semester of college, attending full time. Tr. 416.   Plaintiff was also continuing to work part-time as a cashier. Tr. 416-417; *see also, id*. at 385 ("He is also currently in college, full-time at Buffalo State two days per week.   He is taking 12 credits currently.   He is also working 15 to 18 hours per week.").   Plaintiff indicated that he played basketball for fun, whenever possible. Tr. 418.   Plaintiff stated, though, that he

---

[3] Adult Listing 11.09B involves "a marked limitation in physical functioning coupled with a marked limitation in mental functioning criteria." Tr. 382.

felt quite fatigued from all of his activities, and needed to sleep a great deal. *See, e.g.*, Tr. 423.

As for Dr. Pollack, she noted, initially, that she had reviewed the new records, including a report from a recent neurological examination, as well as recent school records.[4] Tr. 412, 414–415, 425 (Referring to Exhibits 21E &17F–21F). Further, Pollack stated that after reviewing the additional records, she still believed that Plaintiff did not meet the childhood listing, but she had changed her mind about Plaintiff meeting the adult listing, Listing 11.09B. Tr. 426. That is, Pollack indicated that Plaintiff did *not* meet the adult listing. When asked about this, Pollack noted that, "His neurological examinations up to the most recent one of, I think, April of this year, are normal. . . . In terms of, you know, strength and a visual acuity and different – and all the various aspects. " Tr. 426–427. Additionally, Pollack indicated that Plaintiff had less than marked limitations with regard to the listing's mental criteria, meaning understanding, remembering or applying information, interacting with others, maintaining concentration, persistence or pace, or managing oneself. Tr. 427.

When asked why she had changed her opinion, Pollack stated that she could not recall exactly how she had arrived at her previously-expressed opinion, given the passage of time, but that upon her recent review of the entire record she did not feel that Plaintiff met or equaled the listing:

> [B]ased on the review as of this point, and I looked at the entire record again, not just the new part, he – as I said, his neurological examination is either entirely or largely normal such that he certainly wouldn't meet or equal

---

[4] In the interim between the two hearings, Plaintiff finished high school and began college.

8

> 11.09A . . . .   He certainly does have some symptoms that are common in people with MS such as fatigue and so on, but I don't think it would be described as marked, and also in terms of his – the – the [mental] criteria under B, you know, he seems to be functioning at a very high level and wouldn't have a marked limitation in one of these factors.
>
> ***
>
> He's having a full college load and working at the same time, likes to play basketball.  His grades – I think the educational record – I'm just going to go back to that for a second in 21-E was from the high school college classes not his current college classes, but in any case, they showed good – generally good grades and achieving the credits he's supposed to achieve, you know, as he even mentioned earlier coming into college with a good number of credits and so on.

Tr. 428–429; *see also*, Tr. 432–433.  Pollack also stated that upon reflection, she might have initially assigned too much importance to Exhibit 13-F (a report from a 2017 neurological examination) when she testified at the first hearing. Tr. 433, 434. Additionally, Pollack stated that her initial opinion about Plaintif's cognitive performance had changed, since the prior indication of cognitive limitation was not consistent with the rest of the record. Tr. 433 ("In addition, some of the things I was thinking about then or that I testified to then about mainly, you know, cognitive issues and so on certainly seem to not have been sustained given his level of functioning.").   Still further, Pollack stated that her review of the entire record caused her to realize that the records upon which she had based her initial opinion did not show that Plaintiff's limitations were sustained over a long period. Tr. 434 ("I just don't see that those were sustained for any length of time that I could say he was disabled for let's say a period of a year. . . .   And certainly not now.").

9

Pollack further indicated that in her opinion, Plaintiff was capable of performing sustained work at the light or medium exertional level, five days per week, forty hours per week, with postural limitations such as avoiding ladders, scaffolds, ropes and unprotected heights. Tr. 430.   Pollack indicated that Plaintiff might be off-task "a small percentage of the time" while working, and when asked to quantify the amount, stated, "I hate that question, but I'll have to say 10 [percent]. . . .   I have no – there's no way of knowing the answer to that question." Tr. 436.   Further, in that regard, Pollack stated that her opinion that Plaintiff should be limited to medium or light work (as opposed to heavy work), and that he would be off task as much as 10% of the time, was intended to address Plaintiff's claim of fatigue. Tr. 435.

On June 20, 2019, the ALJ issued a decision finding that Plaintiff was not disabled, either as a child or as an adult, at any time between the date of Plaintiff's application (November 27, 2012) and the date of the decision.   With regard to childhood disability, the ALJ found, in pertinent part, that Plaintiff had marked limitation in the domain of health and physical well-being; less-than-marked limitation in the domains of acquiring and using information, attending and completing tasks and moving about and manipulating objects; and no limitation in the domains of interacting and relating with others and caring for oneself.

The ALJ stated, in pertinent part (pertinent to Plaintiff's arguments before the Court), that he gave "great weight" to the opinion of Plaintiff's Seventh Grade Social Studies/Homeroom teacher, Mr. Heil ("Heil"), who indicated that Plaintiff had no limitations in any of the childhood domains except for moving about and manipulating objects. Tr.

129–34, 390.  With regard to that domain, Heil stated that Plaintiff had "an obvious problem" in areas such as moving his body, demonstrating strength and coordination, managing the pace of physical activities and tasks, and controlling motor movements. Tr. 133.  Weil stated, however, that Plaintiff had "a serious problem" with "moving and manipulating things (e.g., pushing, pulling, lifting, carrying, transferring objects, coordinating eyes and hands to manipulate small objects." Tr. 133.  In other words, Heil asserted that Plaintiff had limitations in only one of the six childhood domains of functioning, and that within that domain, Plaintiff had an "obvious" problem as to most functions and a "serious" problem as to one function.  The ALJ explained that despite giving Weil's opinion great weight in general, he nevertheless did not find that Plaintiff had a marked impairment in moving about and manipulating objects, based on the entire record and Plaintiff's activities:

> Mr. Heil noted obvious to serious problems, noting that the claimant tries to do his best despite getting tired and having headaches.  However, the claimant testified that he played basketball and baseball and loved sports (Hearing testimony).  [Agency Review Physician] Dr. SanJose-Santos opined that the claimant had less than marked limitations in this domain and [Consultative Neuropsychologist] Dr. Parrish noted a bilateral fine motor dexterity impairment related to multiple sclerosis.  Dr. Pollack, however, opined to no limitations in this domain (Hearing testimony).  Viewing the evidence in this domain as a whole, the undersigned finds that it is consistent with less than marked limitations.

Tr. 395–396.  Regarding "the evidence as a whole" concerning this domain, the ALJ also gave great weight to the opinions of Dr. Pollack and Dr. SanJose-Santos, each who found that Plaintiff had less-than-marked limitations in the domain of moving about and manipulating objects, and to the opinion of Cheryl Guido ("Guido"), Plaintiff's Eighth

11

Grade teacher, who indicated that Plaintiff had "no problems with moving about and manipulating objects." Tr. 391.

As previously mentioned, however, the ALJ found that Plaintiff had a marked limitation in the domain of health and physical well-being, on account of Plaintiff's MS. Having a marked impairment in just one domain, though, is insufficient to establish that a child claimant's impairments functionally equal a listed impairment.

Plaintiff appealed the ALJ's determination, but the Appeals Counsel declined to review the ALJ's ruling.

In this action, Plaintiff argues that the Court should reverse the Commissioner's decision denying adult benefits primarily because the ALJ erred by failing to properly account for Plaintiff's MS-related fatigue in the RFC finding.  Plaintiff's argument on this point is essentially twofold: First, he contends that the ALJ failed to include limitations in the RFC finding to account for Plaintiff's fatigue and his resulting likelihood of being off task at times; and, second, he contends that the ALJ should not have relied on Dr. Pollack's opinion, and should have instead developed the record by obtaining an opinion from a treating physician regarding the amount of time that Plaintiff would likely be off-task due to fatigue, since Pollack failed to offer a sufficient reason for changing her mind between the first and second parts of the hearing as to whether Plaintiff met the adult listing for MS.

Additionally, Plaintiff maintains that the Court should reverse the Commissioner's decision denying childhood benefits since the ALJ failed to reconcile conflicting evidence concerning Plaintiff's limitations in the domain of "moving about and manipulating

objects."  Specifically, Plaintiff states that it was inconsistent for the ALJ to give great weight to the opinion of teacher Heil, who indicated that Plaintiff had a "serious" problem in this domain, while simultaneously finding that Plaintiff had less than a marked limitation in that domain. Tr. 390, 395–396.  According to Plaintiff, Heil's opinion shows that cumulatively, Plaintiff had a marked impairment in the domain.  Plaintiff also generally asserts that the ALJ "did not conduct a thorough review of the evidence" concerning this domain.

Defendant opposes Plaintiff's motion for judgment on the pleadings and cross-moves for the same relief, arguing that the ALJ's decision is free of legal error and supported by substantial evidence.

The Court has carefully reviewed and considered the parties' submissions and finds, for the reasons discussed below, that Plaintiff's arguments lack merit, and that the Commissioner's decision should be affirmed.

## DISCUSSION

<u>The Alleged Failure by the ALJ to Develop the Record by Obtaining an Opinion from a Treating Doctor Concerning Fatigue</u>

Plaintiff contends that the ALJ should not have relied on Dr. Pollack's opinion concerning the amount time that Plaintiff might be "off task" due to fatigue, and, instead, should have obtained an opinion from a treating doctor.  That is so, according to Plaintiff, particularly since Pollack failed to provide a convincing explanation for why she changed her opinion about whether Plaintiff met the adult listing for MS.

13

The Court disagrees.  As discussed earlier in this Decision and Order, Dr. Pollack gave a very detailed explanation for why she changed her opinion on that point after reviewing the entire record.  Plaintiff's contention to the contrary is simply incorrect.  Nor has Plaintiff otherwise shown that the ALJ had a duty to further develop the record, as there were no obvious gaps in the evidence.[5]

<u>The Alleged Failure by the ALJ to Account for Fatigue in the RFC Finding</u>

Plaintiff next asserts that the ALJ's RFC finding failed to account for Plaintiff's fatigue, and, in that regard, failed to include a limitation concerning Plaintiff being off-task due to fatigue, despite the fact that Dr. Pollack testified Plaintiff might be off-task up to 10% of the time due to fatigue.

However, the Court again disagrees.  The ALJ expressly accounted for Plaintiff's MS-related fatigue by limiting Plaintiff to a "reduced range of sedentary exertion." See, Tr.

---

[5] The legal principles concerning an ALJ's duty to develop the record, are generally well settled:

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). "Whether dealing with a *pro se* claimant or one represented by counsel, the ALJ must 'develop [the claimant's] complete medical history.'" *Lopez v. Comm'r of Soc. Sec.*, 622 Fed.Appx. 59, 60 (2d Cir. 2015) (summary order) (citing 20 C.F.R. § 404.1512; *Perez*, 77 F.3d at 47 (describing duty to develop record)). "[T]he agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." *Eusepi v. Colvin*, 595 Fed.Appx. 7, 9 (2d Cir. 2014) (summary order) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 & n. 5 (2d Cir. 1999)). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Lowry v. Astrue*, 474 Fed.Appx. 801, 804 (2d Cir. 2012) (unpublished opn.) (quotations and citations omitted).

*Gonzalez v. Colvin*, No. 1:15-CV-00767(MAT), 2018 WL 1040250, at *2 (W.D.N.Y. Feb. 24, 2018).

14

398 ("*To address fatigue*, the undersigned has limited him to a reduced range of sedentary exertion.") (emphasis added).   Notably, the ALJ limited Plaintiff to less than a full range of sedentary work for this reason even though Dr. Pollack opined that Plaintiff was capable of performing light and even medium exertion work, even with his MS-related fatigue. Tr. 435.   Accordingly, Plaintiff's assertion that the ALJ failed to account for Plaintiff's fatigue is inaccurate.   Rather, the ALJ accounted for it by limiting Plaintiff to only sedentary work, to lessen the possibility that Plaintiff would be become fatigued in the first place.

Plaintiff also alleges that reversal is required since the ALJ "failed to include any limitations [in the RFC] regarding off-task time," "despite Dr. Pollack's testimony that Plaintiff would be off-task 10 percent of the time."[6]   However, the Court disagrees, since the ALJ was not required to accept that aspect of Pollack's opinion.   Indeed, the ALJ found that "claimant has been consistently alert and oriented times three, even when he has complained of significant fatigue." Tr. 382.   Moreover, even assuming *arguendo* that the ALJ erred in failing to include a specific limitation in the RFC concerning Plaintiff being off task, the error was harmless.   In particular, while Pollack said Plaintiff might be off task as much as 10% of the time, the VE indicated that a claimant could be off task as much as 15% of the time and still maintain competitive employment. Tr. 503.

<u>The ALJ's Alleged Failure to Fully Consider and Reconcile Evidence</u>

Lastly, Plaintiff maintains that the Court should reverse the Commissioner's decision denying childhood benefits since the ALJ failed to reconcile conflicting evidence

---

[6] Pl. Mem. of Law, ECF No. 13-1 at p. 18.

15

concerning Plaintiff's limitations in the domain of "moving about and manipulating objects." As discussed earlier, Plaintiff's argument on this point relates primarily to the opinion of Mr. Heil, Plaintiff's seventh grade teacher.

Plaintiff contends that the ALJ failed to explore or recognize that it was inconsistent for him to give great weight to Heil's opinion, while also finding that Plaintiff had less-than-marked limitations in the subject domain. In this regard, Plaintiff contends that Heil's opinion indicates that, cumulatively, Plaintiff had at least a marked limitation in this domain. Again, though, the Court disagrees. Plaintiff is correct that Heil's opinion can be interpreted to indicate that Plaintiff has impairments in the subject domain that cumulatively amount to a marked limitation in that domain. However, Plaintiff's argument inaccurately presupposes that because the ALJ gave great weight to Heil's opinions concerning the various domains generally, he was required to adopt Heil's opinions about the domain of moving about and manipulating objects. Rather, the ALJ did not accept that aspect of Heil's opinion, for reasons that he explained. Specifically, the ALJ relied on the contrary opinions of Dr. Pollack, Dr. SanJose-Santos and Ms. Guido, discussed earlier, as well as the fact that Plaintiff "played basketball and baseball." Tr. 395. Consequently, there was no inconsistency between the ALJ giving Heil's opinion great weight and his finding that Plaintiff had less than a marked limitation in the domain of moving about and manipulating objects. Nor is there merit to Plaintiff's contention that the ALJ's finding concerning that domain is unsupported by substantial evidence.

Finally, there is also no merit to Plaintiff's bald assertion that the ALJ "did not conduct a thorough review of the evidence in this domain." To the contrary, the Court

finds that the ALJ conducted a very thorough review of the entire record.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 13) for judgment on the pleadings is denied, Defendant's cross-motion (ECF No. 16) for the same relief is granted, and this matter is dismissed. The Clerk of the Court is directed to enter judgment for Defendant and to close this action.

So Ordered.

Dated: Rochester, New York
       September 17, 2021

ENTER:

*/s/ Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge